**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ricky Lynn STARR, Defendant-Appellant.**

No. 13583.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 4, 1984.

John D. Ashcroft, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Blair Buckley, Jr., Public Defender, Caruthersville, for defendant-appellant.

PREWITT, Chief Judge.

Defendant was convicted of the second degree murder of a woman he was living with. He was sentenced to 25 years' imprisonment. He has three contentions on appeal.

For his first point relied on he asserts that the trial court erred in admitting into evidence two "gun residue kits" because no proper chain of custody was established between the highway patrol sergeant who used the kits in making tests upon the hands of defendant and the victim and the chief of police who transported the kits to the crime laboratory where they were tested.

To establish a chain of custody of an item of evidence it is not necessary to account for every hand-to-hand transfer of it between the time it is obtained and its introduction at trial. *State v. Sherrill,* 657 S.W.2d 731, 736 (Mo.App.1983). Evidence necessary to establish a chain of custody is sufficient if it demonstrates a reasonable assurance that the condition of the exhibit remains the same. Id.

We think the chain of custody was sufficiently established from the sergeant, who took the tests, to the chief of police who delivered the kits to the crime labora-

tory. The evidence indicated that the only changes made after the sergeant used them were the tests at the laboratory. The sergeant testified that the contents of the kit relating to Debbie Kimball was in the same condition as when he sent it to the laboratory other than that the laboratory had looked at it and rearranged the "vials". Each of the vials are in a plastic bag and marked. The sergeant said the kit used on the hands of defendant was the same as after he used it, other than what the lab had done to it.

In addition, we see no prejudice to defendant in their admission as the results of the tests were consistent with his testimony. Defendant testified that after work he was playing pool at an establishment when Debbie Kimball, the woman he was living with, came there and asked when he was coming home. He said he told her he would go home after the game of pool was over, and she left, and when he finished the game he went home. He was home about five minutes when she came to the house. With her was her half-brother, Timmy Hector.

Defendant said he and Timmy Hector had an argument, but did not remember what it was about. He then walked around the block and when he came back in the house Debbie Kimball "was standin' there with the gun, and she, you know, she had it cocked, she, she said she was gonna shoot me, which I didn't believe it cause I didn't think it was loaded. And then I grabbed the gun from her when it, when it hit the floor, and that's when it went off."

Defendant testified, "I thought she was jokin' with me and I just, we started wrasslin' over it, and when I grabbed it it hit the floor and that's when it discharged." He said he "just grabbed it. And she had ahold of it too" when it hit the floor between them and went off.

Other witnesses established that Debbie Kimball was shot "in the right chin just under the cheekbone" and died shortly thereafter.

In a statement made to the police defendant said he "got the gun from under the couch. The gun went off when I picked it up" and the shot struck Debbie Kimball as she stood in a hall leading to the kitchen.

A "Chemist-Examiner with the Southeast Missouri Regional Crime Laboratory" stated that the samples collected by the kits from the hands of Debbie Kimball were "consistent with her having recently handled a firearm or received a muzzle blast on her hands." He said that the sample collected from defendant was "consistent with a person having recently handled and discharged a firearm." These findings do not conflict with defendant's trial version of the incident that they were struggling over the weapon and it discharged accidentally when he grabbed it and it hit the floor. Point one is denied.

■ Defendant contends in his second point that the trial court erred in admitting into evidence a shotgun "on the ground that the shotgun had never been connected to the shooting in that the gun was not found at the scene in the house, but in the back of the Defendant's father's truck, another gun which the Defendant's father said was his was also in the truck, and no one positively identified the gun as the one used in the shooting."

The Chief of Police of New Madrid stated defendant told him that Debbie Kimball had been shot with a .410 shotgun and that the questioned exhibit was that shotgun. This evidence sufficiently connected the shotgun to the shooting. Point two is denied.

By his remaining point defendant contends that the trial court committed plain error in permitting the "Chemist-Examiner" to testify as to tests made to determine the distance from the gun to the deceased at the time of the shot because the same brand shells were not used in the test, the chemist had not been qualified as a firearms expert and he "was incorrect in stating the factors which control the results of the test, and the gun tested was never identified as the weapon which caused the death." Defendant was represented by different counsel at trial and his present at-

torney acknowledges that these contentions were not preserved there.

■ Results of experiments made out of court are admissible in the discretion of the trial court if it is shown that the experiments were conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit. *Deskin v. Brewer*, 590 S.W.2d 392, 397 (Mo.App.1979); *State v. Gish*, 371 S.W.2d 654, 657 (Mo.App.1963). See also *State v. Shuler*, 486 S.W.2d 505, 510 (Mo.1972) and *State v. Truster*, 334 S.W.2d 104, 110 (Mo.1960), where results of experiments with firearms were allowed.

In discussing the previous point we concluded that the gun was sufficiently identified as having caused Debbie Kimball's death.

■ The chemist-examiner stated that in making the tests he fired the shotgun three times into white sheets of paper, once with the barrel up against the paper, once three inches away and once twelve inches away. He said he then "looked at the diameter of the pattern that was on, on her skin versus the patterns I made on white paper." He used a different brand of shell than was fired when the victim was killed, but testified that the brand of shell would not change the results because the "variables involved in range determination are the weapon itself, the length of the barrel, and the diameter of the bore; as long as you're using the same weapon you should get data that is reasonably similar." He concluded that the gun was fired with the end of the barrel approximately three inches from the victim.

No objection was made as to his qualifications to make such a test and had there been an objection it is possible that his expertise could have been more definitely established.

On cross-examination he stated that shells made at different factories by different makers would not be exactly alike. On redirect examination he stated that these differences would not change the test "because the contributing variable here is the length of the barrel and the size of the bore".

Defendant states that facts of common knowledge may be judicially noticed, see *State v. Stavricos*, 506 S.W.2d 51, 57 (Mo. App.1974), and contends "it is common knowledge, among the millions of shotgunners in the United States that different brands of factory loads get different results using the same gun." Whether that is correct we do not know, but even if it is, there is no showing that the result of the test performed here would have been materially different, and the only evidence is that it would not have been changed.

Based on the testimony of the witness the circumstances of the test were substantially similar to that which occurred as it relates to the information sought. There is no evidence questioning the tests or the witness's conclusion and we have no basis to dispute the witness's statements. We find no error in his testimony and certainly no plain error as stated by Rule 30.20. This point is denied.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.