**Edward Lee BAGBY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 16223.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 26, 1990.

**878**

Gregory C. Wells, Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Edward Lee Bagby ("movant") appeals from a judgment denying his motion under Rule 24.035[1] to vacate his conviction of the class B felony of voluntary manslaughter, § 565.023.1(1), RSMo 1986, for which he was sentenced to 15 years' imprisonment. The conviction resulted from a plea of guilty.

Movant's motion to vacate was denied after an evidentiary hearing. Movant's brief presents one point, which avers that the denial of relief was clearly erroneous in that movant received ineffective assistance of counsel when the lawyer who represented him at the time he pled guilty (henceforth referred to as "defense counsel") failed to

> "... contact, interview and call as witnesses to his suppression hearing [movant's] coworkers [sic], who were present at [movant's] place of employment when police took him into custody and who heard [movant] ask police several times to have his attorney present prior to being questioned by police. This was highly prejudicial to [movant] as the only evidence that tied him directly to the victim and the incident was his own incriminating statement that was made after several hours of police interrogation and without the benefit of his counsel being present at any time during questioning or when [movant] made his incriminating statement. This prejudiced [movant] and rendered his guilty plea involuntary, as but for the overruling of his motion to suppress due to inadequate assistance of counsel, [movant] would not have pleaded guilty."

1. Rule references are to Missouri Rules of Criminal Procedure (19th ed.1988).

Movant was initially charged with murder in the second degree. Some three months prior to the date he entered his plea of guilty the circuit court conducted a hearing on movant's motion to suppress the statement mentioned above. Both sides presented evidence, after which the circuit court denied the motion.

Later, as a result of negotiations between defense counsel and the prosecutor, the charge was reduced to voluntary manslaughter and the prosecutor recommended a 15–year sentence upon movant's plea of guilty.

■ As part of the guilty plea proceeding movant signed a three-page document containing sundry questions and answers. During the guilty plea proceeding the circuit court placed movant under oath and questioned him on various matters. The dialogue included this:

"Q Also I note that you made a statement to officers who investigated this matter. Before you made that statement, were you advised of your rights under the Miranda decision?

A Yes, your Honor.

Q In answer to number five, the question was did anyone use any force, threats, coercion, intimidation, promises, or undue persuasion to get you to make such a statement, and your answer is, yes, they told me I would get the gas chamber or lethal injection if I didn't cooperate. Is that your statement?

A Yes, your Honor.

Q Do you recall that we had a motion to suppress that statement that was heard here in this court, and do you recall that the officer from Kansas City came down here and testified?

A Yes, your Honor.

Q And I believe that also some of the local officers who didn't hear your statement, who didn't take your confession, they also testified, and then if my recollection is correct, after they had left, that you talked to the officer from Kansas City and did make a statement to him, is that true?

A Yes, your Honor.

. . . .

Q And you understand that your statement here in answer to question number five has been contradicted by those officers, and that at the end of that motion to suppress your statement, the Court overruled that motion; do you understand that?

A In a way.

Q In other words, the Court found that your statement was not given or induced by any force, threats, coercion, intimidation, or promises, or undue persuasion. The Court found it was a voluntary statement. You gave it of your own free will. Do you understand that?

A Yes, your Honor.

Q And although you make this statement here that they threatened you with the gas chamber if you didn't cooperate, that the Court resolved that issue in effect by saying that that may be your position, but in effect I don't believe you on that, I believe the officers, the three officers who testified; you understand that?

A Yes, sir.

. . . .

Q Today are you satisfied that [defense counsel] has properly represented you?

A Yes, your Honor.

Q Is there anything that you wanted him to do that you just couldn't get him to do?

A No, your Honor."

The circuit court, at the time movant entered his plea of guilty, found that the plea was voluntarily and intelligently made.

At the sentencing hearing a month later the circuit court again placed movant under oath and, pursuant to Rule 29.07(a)(4), inquired of movant about the assistance he had received from defense counsel. This colloquy ensued:

"Q And has [defense counsel] been your attorney throughout the proceedings in this case?

A Yes, your Honor.

"Q And was [defense counsel] present with you ... when you entered your plea of guilty?

A Yes, your Honor.

. . . .

Q And in representing you up to that point, did your attorney do the things that you had asked him to do, that is before you entered your plea of guilty?

A Yes, your Honor.

. . . .

Q Are you satisfied with the representation that [defense counsel] has provided for you in this case?

A Yes, your Honor."

At the conclusion of the sentencing hearing the circuit court found no probable cause to believe movant had received ineffective assistance of counsel.

Movant's motion to vacate alleged, insofar as pertinent to this appeal, that defense counsel rendered ineffective assistance on the motion to suppress in that counsel failed to call "the two witnesses who had heard [m]ovant tell the arresting [officers] that he wished to speak with counsel before being questioned." Movant averred that had those witnesses been presented, the motion to suppress would have been granted as said witnesses would have established that movant's "confession" was obtained under duress and in violation of his constitutional rights.

Defense counsel was called as a witness by movant at the evidentiary hearing on the motion to vacate. Defense counsel's testimony included this:

"Q Did [movant] tell you there was two witnesses, a Lloyd Ramirez, and a Shawn Tressel, (phonetic), who were present when he told the police that he wanted a lawyer present?

A No, Mr. Bagby had told me that there was a man by the name of Lloyd, a co-worker, who was there when the police came out to his place of employment. The other name I was not aware of.

. . . .

Q ... the reason you filed that motion to suppress was because you had questions as to the legality of the state-ments and confessions made by this defendant?

A That's correct.

Q And those were litigated in front of this Judge, and he overruled it, is that correct?

A That's true.

Q And by overruling that motion to suppress, it was your opinion that those statements would be introduced into evidence at trial?

A Yes."

Movant's testimony at the evidentiary hearing on the motion to vacate included this:

"Q Did you ask the police at the time you were taken into custody if you were under arrest?

Q Yes.

Q What did they tell you?

A No.

Q And did you ask the police to stop questioning you until you had a right to talk to a lawyer?

A Yes.

Q And could you tell the Court what happened during that period of time?

A I asked them if I could call a lawyer before I even left my place of employment, and they wouldn't let me, on three different occasions.

. . . .

Q Did your lawyer subpoena two witnesses who were present when you told the lawyers (sic) that you didn't want to answer any further questions until you had a lawyer present?

A No.

Q Did you tell him about these two witnesses?

A Yes.

Q And they could have testified to what?

A Testified that I did ask for a lawyer three different times, and asked if I was under arrest three different times.

Q And who were they?

A Lloyd Ramirez, my co-worker, and another guy, he was my supervisor. I can't recall his name."

Neither of the co-workers mentioned by movant testified at the evidentiary hearing on the motion to vacate.

The circuit court, in denying the motion to vacate, noted that no transcript of the hearing on the motion to suppress had been made and no such transcript was offered as evidence in support of the motion to vacate. The circuit court found that movant's plea of guilty was voluntarily and intelligently made, and that defense counsel used the care and skill of a reasonably competent attorney under the circumstances existing at all times during his representation of movant.

Before discussing movant's point relied on we must address the State's argument that movant waived his right to proceed under Rule 24.035 by failing to file the motion to vacate within the time allowed by paragraph "(b)" of that Rule. That paragraph provides:

" ... The motion shall be filed within ninety days after the movant is delivered to the custody of the department of corrections. Failure to file a motion within the time provided by this Rule 24.035 shall constitute a complete waiver of any right to proceed under this Rule 24.035."

The State's brief asserts movant was delivered to the department of corrections July 18, 1988. The motion to vacate was filed November 10, 1988.

The flaw in the State's position is that the portions of the record relied on by the State to establish that movant was delivered to the department of corrections July 18, 1988, do not establish that fact. While the record shows that the circuit court, on July 18, 1988, ordered that movant be transported to the department of corrections, nothing in the record establishes the date this order was carried out. While it would have been a simple matter for the prosecutor, at the evidentiary hearing on the motion to vacate, to present evidence establishing the date movant was delivered to the department of corrections, the prosecutor adduced no such evidence.

Turning to the merits of movant's assignment of error, we note that our review is limited to a determination of whether the findings and conclusions of the circuit court are clearly erroneous. Rule 24.035(j); *Gmerek v. State*, 781 S.W.2d 575, 577 (Mo. App.1989); *Chatman v. State*, 766 S.W.2d 724, 725 (Mo.App.1989).

According to movant's testimony at the evidentiary hearing on the motion to vacate, he was taken into custody by police at his place of employment around 3:30 p.m., but was not given an opportunity to call his lawyer until he had been questioned "for a number of hours." Movant testified he made an incriminating statement "around 7:30."

Obviously, anyone who was present at movant's place of employment when he was taken into custody could have supplied testimony as to only what occurred prior to the time movant departed in the custody of the police. There was no evidence that any co-worker accompanied movant to the interrogation site. It is thus manifest that any testimony a co-worker could have given would have been confined to what occurred when movant was initially taken into custody, not what occurred during the incustody interrogation.

It is also noteworthy that at the guilty plea proceeding—during which the circuit court discussed with movant the adverse ruling on the motion to suppress—movant solemnly confirmed to the circuit court under oath that there was nothing movant wanted defense counsel to do that counsel had not done. At the sentencing hearing a month later, movant again told the circuit court under oath that defense counsel had done the things movant had asked him to do prior to entry of the plea of guilty. On neither occasion did movant mention there were two witnesses defense counsel should have presented at the suppression hearing.

Furthermore, defense counsel, in his testimony at the evidentiary hearing on the motion to vacate, recalled movant mentioning only one co-worker—"a man by the name of Lloyd"—who was present when the police appeared at movant's place of employment. Nowhere in defense counsel's testimony did he state that movant told him this individual was present when

movant told the police he wanted a lawyer. The only testimony to that effect came from movant. The circuit court was not required to believe that testimony. *Lett v. State*, 761 S.W.2d 656, 657[2] (Mo.App. 1988); *Thomas v. State*, 759 S.W.2d 622, 623[2] (Mo.App.1988); *Scott v. State*, 758 S.W.2d 170, 172[2] (Mo.App.1988).

At the guilty plea proceeding the circuit court told movant the court had disbelieved movant's testimony at the suppression hearing. The circuit court—the same judge—obviously disbelieved movant's testimony at the evidentiary hearing on the motion to vacate.

■ Movant bore the burden of proving his grounds for relief by a preponderance of the evidence. Rule 24.035(h); *Wiles v. State*, 689 S.W.2d 786, 787[2] (Mo.App. 1985); *Van Moore v. State*, 667 S.W.2d 470, 471[1] (Mo.App.1984). As our review is limited to a determination of whether the findings and conclusions of the circuit court are clearly erroneous, we cannot reverse unless a review of the entire record leaves us with a definite and firm impression that a mistake has been made. *Knight v. State*, 491 S.W.2d 282, 284[1] (Mo.1973); *Yount v. State*, 761 S.W.2d 674, 675[2] (Mo.App.1988).

■ Where a prisoner has pled guilty, a claim of ineffective assistance of counsel is material only in determining whether the alleged ineffectiveness affected the voluntariness of the plea. *Brown v. State*, 753 S.W.2d 22, 23[1] (Mo.App.1988); *Bailey v. State*, 738 S.W.2d 577, 578[2] (Mo.App. 1987). To prevail on a claim of ineffective assistance of counsel a prisoner must show that (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the latter requirement a prisoner seeking to vacate a conviction resulting from a guilty plea must show there is a reasonable probability that but for counsel's errors, the prisoner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S.

52, 59, 106 S.Ct. 366, 370[3], 88 L.Ed.2d 203 (1985); *Kline v. State*, 704 S.W.2d 721, 722[3] (Mo.App.1986).

When we consider in the instant case that (a) the two alleged co-workers could have, at most, testified as to only what occurred prior to the time movant was taken by police from his place of employment, (b) movant declared under oath at the guilty plea proceeding, and again at the sentencing proceeding, that there was nothing he wanted defense counsel to do that counsel had neglected, (c) defense counsel testified at the evidentiary hearing on the motion to vacate that movant mentioned only one co-worker who was present when the police appeared at movant's place of employment, and nowhere in counsel's testimony did he state that movant told him this individual was present when movant told the police he wanted a lawyer, (d) the only testimony supporting movant's allegation that the co-workers heard movant ask the police for a lawyer was movant's testimony, which the circuit court was not obliged to believe, and (e) the record on appeal contains no transcript of the hearing on the motion to suppress (none having been presented to the circuit court in connection with the motion to vacate), thereby making it impossible for a reviewing court to determine what effect, if any, the co-workers might have had if they had been called as witnesses at the suppression hearing, we cannot brand as clearly erroneous the circuit court's finding that defense counsel was not guilty of ineffective assistance in failing to call the co-workers as witnesses at the suppression hearing. The judgment is, accordingly, affirmed.

GREENE and PARRISH, JJ., concur.