Ricky **STARR**, Appellant,

v.

**STATE of Missouri, Respondent.**

No. 16497.

Missouri Court of Appeals,
Southern District,
Division One.

May 9, 1990.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Ricky Starr ("movant") appeals from the denial of his motion per Rule 27.26, Missouri Rules of Criminal Procedure (17th ed. 1986), to vacate his conviction of murder in the second degree and 25–year prison sentence. The conviction, a result of trial by jury, was affirmed on direct appeal. *State v. Starr*, 676 S.W.2d 311 (Mo.App.1984).

Movant's 27.26 motion was denied by the circuit court ("the hearing court") after an evidentiary hearing. In this appeal movant presents one point relied on; it reads:

"The hearing court clearly erred in denying appellant's motion for postconviction relief ... because appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, in that trial counsel refused to move for a change of venue despite appellant's request, and despite the fact that there had been adverse pretrial publicity in the county, which was a county having less than seventy-five thousand inhabitants, so that a change of venue would have been ordered as of right merely by filing a timely motion, thereby insuring [sic] a jury panel untainted by adverse pretrial publicity."

Movant testified in the hearing court that prior to the jury trial he asked his lawyer ("trial counsel") to file a motion for change of venue. Movant quoted trial counsel as saying he would not do so because "it wouldn't matter ... we would have the same jury panel there as we would here."

The State presented trial counsel as a witness in the hearing court. Trial counsel's testimony included this:

"Q. ... Mr. Starr also testified that he had requested that you file a change of venue.

A. No, he didn't.

Q. Okay. Did you all discuss a change of venue?

A. I always discuss that.

Q. Do you always inform them of that—

A. Of their right to the change of venue. However, I would have recommended that he not take the change of venue.

Q. Okay. But you don't remember that you did recommend it?

A. I don't remember that, but I would have—

Q. But if he'd have—

A. That would have been my policy on defending this lawsuit.

Q. All right, sir. If he had insisted on it, would you have filed it, sir?

A. If he had insisted on it, I would have filed it.

Q. Okay. What was your reason for thinking that you didn't need a change of venue?

A. Oh, I think I would have known the jurors better here in New Madrid County than anybody else, and his family was all from New Madrid County, and I think we'd have done better here than we would anywhere else in defending the lawsuit.

. . . .

Q. You testified, also, that you discussed the change of venue with the Defendant because you always discuss the change of venue?

A. I always do that, yes.

Q. Is your statement here today that you discussed that with Mr. Starr based on your policy or your recollection of your conversation with Mr. Starr?

A. I'm sure Mr. Starr and I discussed that matter.

Q. And do you specifically recall doing that?

A. You mean, at the jail, do I recall whether I—what my conversation with him at that time was?

Q. Yes.

A. Word for word, no, I can't do that.

Q. I'm not asking you for word for word . . . just simply whether you specifically do recall doing that?

A. Oh, I'm—I—I'm sure I did it. Now, whether I can recall that specific instant or not, I can't—

Q. So, you cannot—

A. —tell you.

Q. —specifically recall doing that. You're just sure you must have; is that what you're saying?

A. Well, I'm sure I did.

Q. Did you consider pretrial publicity in making a determination as to whether there should be a change of venue in this case?

A. Yes.

Q. Did you review any articles or newspaper coverage in this case?

A. I take the papers in the area, and I'd read them all.

Q. Okay. Do you recall whether there were any articles regarding this shooting?

A. Certainly.

Q. And do you know how many articles there were?

A. There were a number.

Q. Do you recall what that number was?

A. Oh, I can't do that.

Q. Do you recall whether there was any coverage by radio station of this shooting?

A. Well, I don't remember hearing any.

Q. Do you recall if there was any coverage by television station?

A. I don't recall any.

Q. Did you check with the local television stations that are broadcast here in this—in New Madrid County to—

A. No,—

Q. —determine?

A. —I wouldn't have done that.

Q. Would you have checked with the radio stations to determine whether—

A. No, I wouldn't—

Q. —they had aired anything?

A. —have done that.

Q. Would you have checked with the newspaper to determine exactly how many articles had been printed—or published regarding this shooting?

A. I take most of the papers of the area and read them regularly.

Q. But you did not actually check with the publisher to determine how many had been published?

A. Oh, no, I wouldn't do that."

Trial counsel testified he had been a lawyer since 1940, had handled hundreds of criminal cases, and had defended over 40 murder cases before a jury. Trial counsel added that in preparing for movant's trial he (counsel) went through the jury list and checked the jurors against files in his office "as to what previously those jurors had done in previous criminal cases."

The hearing court found that "none of the allegations as to the failure to request

a change of venue ... were proved by a preponderance of the evidence."

Our review is limited to a determination of whether the findings, conclusions, and judgment of the hearing court are clearly erroneous. Rule 27.26(j); *Jones v. State*, 767 S.W.2d 41, 43 (Mo. banc 1989), *cert. denied*, — U.S. —, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989).

Movant asserts that the hearing court's denial of relief was clearly erroneous in that the pretrial publicity about the crime "forestalled the possibility of seating an untainted jury." Movant maintains there had been a number of newspaper articles regarding the homicide and that if trial counsel had moved for a change of venue the outcome of the trial "would have likely been changed." Therefore, says movant, trial counsel rendered ineffective assistance in failing to request a change of venue.

To prevail on a claim of ineffective assistance of counsel a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

Here, movant presented no evidence in the hearing court regarding the extent or substance of the "pretrial publicity," nor did he demonstrate how that publicity made it impossible to seat an unbiased jury.[1]

The hearing court was not obliged to believe movant's testimony that he asked trial counsel to move for a change of venue but trial counsel refused. *Bagby v. State*, 784 S.W.2d 877, 882 (Mo.App.1990); *Lett v. State*, 761 S.W.2d 656, 657[2] (Mo.App. 1988); *Thomas v. State*, 759 S.W.2d 622, 623[2] (Mo.App.1988).

Furthermore, as movant presented no evidence as to the amount or character of the pretrial publicity and adduced no proof that it impaired the selection of an impartial jury, there was no showing that the failure to move for a change of venue was prejudicial.

Trial counsel, it will be recalled, testified movant did not request a change of venue but that even if he had, trial counsel would have recommended against it because counsel would have known the jurors in New Madrid County better than anyone else and movant's family was from that county.

Credibility of the witnesses in this post-conviction proceeding was for the hearing court to determine. *Evans v. State*, 759 S.W.2d 858, 859[2] (Mo.App.1988); *Wiles v. State*, 689 S.W.2d 786, 787[3] (Mo.App. 1985). Given trial counsel's testimony that movant did not request a change of venue and the absence of evidence that the pretrial publicity tainted the jurors at movant's trial, we cannot brand as clearly erroneous the hearing court's finding that movant's allegations regarding counsel's failure to request a change of venue were not proved by a preponderance of the evidence.

Moreover, there was evidence that trial counsel's conclusion that he would have recommended against a change of venue had movant requested one was a reasonable tactical decision. Trial counsel testified he would have known the jurors in New Madrid County better than anyone else, that movant's family was from that county, that counsel had read the newspaper accounts of the crime, and that counsel was able to check his records of the jurors to see what verdicts they had rendered in earlier cases.

A tactical decision by counsel not to seek a change of venue is not a subject for hindsight and does not demonstrate incompetency of counsel unless manifestly wrong. *Beeman v. State*, 502 S.W.2d 254,

---

**1.** Movant filed a motion in this Court asking that the transcript in his direct appeal be made a part of the record in the instant appeal. We took that motion with the case. The voir dire of the jury panel does not appear in the transcript in the direct appeal, hence there is nothing to substantiate movant's contention that the pretrial publicity "forestalled the possibility of seating an untainted jury." As nothing in the transcript in the direct appeal aids movant in the instant appeal, his motion to transfer the transcript is denied.

257 (Mo.1973); *Mitchell v. State*, 747 S.W.2d 234, 236[2] (Mo.App.1988); *Fitzpatrick v. State*, 578 S.W.2d 339, 340[4] (Mo.App.1979). There was no evidence before the hearing court that trial counsel's belief that it was advantageous to try movant's case in New Madrid County was manifestly wrong.

The judgment of the hearing court denying relief is affirmed.

PREWITT and PARRISH, JJ., concur.