STATE of Missouri, Respondent,

v.

Alvis J. WILLIAMS, Appellant.

Alvis J. WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 50047, WD 52049.

Missouri Court of Appeals, Western District.

Dec. 24, 1996.

Susan L. Hogan, Appellate Defender, Kansas City, for Appellant.

Philip M. Koppe, Assistant Attorney General, Kansas City, for Respondent.

Before BRECKENRIDGE, P.J., and LAURA DENVIR STITH and HOWARD, JJ.

HOWARD, Judge.

Alvis J. Williams appeals from convictions of two counts of burglary in the second degree, § 569.170, RSMo 1994, and two counts of stealing property with a value of $150.00 or more, § 570.030, RSMo 1994. Mr. Williams was sentenced as a class X offender to four consecutive twenty-year terms of imprisonment.[1] On direct appeal, Mr. Williams contends that the trial court erred by sentencing him as a class X offender with respect to his burglary convictions, and that his four consecutive twenty-year sentences constitute cruel and unusual punishment. Mr. Williams also appeals from the denial of his Rule 29.15 motion for post-conviction relief, claiming various instances of ineffective assistance of counsel.

The judgments of the trial court and the motion court are affirmed.

At approximately 2:10 p.m. on October 18, 1993, a witness inside a neighboring resi-

---

1. Under § 558.019, RSMo 1986, a criminal defendant with three or more prior felony convictions was referred to as a class X offender. Although more recent versions of this statute have deleted the class X designation, this opinion will employ the term as a matter of convenience.

dence heard a car horn honking continuously in the driveway of a duplex on Meyer Boulevard in Kansas City, Missouri. Looking out a window, the witness saw a passenger emerge from the automobile, run up to the duplex, and begin ringing the doorbells of the units. When there was no response, the passenger motioned to the driver, whom the witness identified as Mr. Williams, to back out of the driveway and park down the street.

The passenger then ran around to the back of the duplex, and Mr. Williams got out of the car and forced open the door to one of the units. Mr. Williams let his accomplice into the unit through a sliding glass door, and the two men proceeded to remove items from both units of the duplex. The accomplice moved the car back into the driveway, and the two men carried a VCR, a large screen television, a computer system, audio equipment, and other items to the car.

The witness telephoned the police numerous times as he watched the burglaries take place. He also wrote down the number of the automobile's license plate. The police arrived approximately ten minutes after the burglars left the scene. A computer check of the license plate number provided by the witness indicated that the car belonged to Mr. Williams and Marva Jean Stewart. In addition, the witness identified Mr. Williams from a photographic lineup.

Mr. Williams was arrested and charged with two counts of second-degree burglary and two counts of stealing. Prior to trial, the court found him to be a class X offender after confirming that he had fourteen prior felony convictions. A jury found Mr. Williams guilty on all four counts, and he was sentenced as a class X offender to four consecutive twenty-year terms of imprisonment. After his sentencing, Mr. Williams filed a Rule 29.15 motion for post-conviction relief, which was denied without an evidentiary hearing.

In his first point on direct appeal, Mr. Williams claims that, with respect to his two burglary convictions, the trial court erred by sentencing him as a class X offender pursu-ant to § 558.019. Mr. Williams argues that the version of § 558.019 which governed his case applied only to certain class A and B felonies and to "dangerous felonies" as defined by § 556.061(8), and therefore did not apply to the offense of burglary.

Section 558.019, RSMo Supp.1993, which was the version of that statute in effect at the time the burglaries were committed, provided that its enhanced punishment provisions were applicable only to certain class A and B felonies, and to "dangerous felonies as defined in subdivision (8) of section 556.061 RSMo." These limitations were eliminated when § 558.019 was amended in 1994. However, § 558.019.7, RSMo 1994 states that the amended version of the statute applies "only to offenses occurring on or after August 28, 1994." As Mr. Williams' offenses occurred on October 18, 1993, the earlier version of § 558.019 applies to Mr. Williams. *State v. Dean,* 898 S.W.2d 704, 706–07 (Mo.App.1995).

Burglary in the second degree is not a class A or B felony, but a class C felony. Section 569.170.2. Therefore, if the enhanced punishment provisions of the earlier version of § 558.019 are to apply to the case at bar, then burglary must constitute a "dangerous felony" as that term is defined in § 556.061(8).

Section 556.061(8), RSMo Supp.1993, which was the version of the statute in effect when Mr. Williams committed the charged offenses, defined "dangerous felony" to include the offense of burglary. On August 28, 1994, less than two weeks before Mr. Williams was sentenced, an amended version of § 556.061(8) went into effect. This new version of § 556.061(8) excluded the offense of burglary from the definition of a "dangerous felony."

■ Mr. Williams argues that he is entitled to have his punishment on the burglary convictions assessed according to the amended version of § 556.061(8), as that was the version which was in effect at the time of his sentencing. As a general rule, penalties imposed for the violations of criminal laws are

to be governed by statutes in effect at the time of the commission of the crimes. *Mannon v. State,* 788 S.W.2d 315, 321–22 (Mo. App.1990). Nevertheless, Mr. Williams contends that he should have been sentenced in accordance with the new definition of the term "dangerous felony" because of the operation of § 1.160, which provides, in pertinent part:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

■ Mr. Williams raises this issue for the first time on appeal. Because Mr. Williams did not present this issue to the trial court, he is foreclosed from presenting it to this court. *State v. Tivis,* 933 S.W.2d 843 (Mo. App.W.D. 1996).

■ Even if this point had been properly preserved for appeal, Mr. Williams would still not be entitled to relief, as this court has recently rejected an identical argument in *Tivis.* There, we held that an amendment to the definition of "dangerous felony" in § 556.061(8) does not constitute an "alteration of the law creating the offense" of second degree burglary, and therefore § 1.160(2) does not apply in this situation. *Tivis,* 933 S.W.2d at 848. Point denied.

■ In his second point on direct appeal, Mr. Williams claims that this cause should be remanded for resentencing because the sentences he received were disproportionate to the crimes that were committed. He notes that, pursuant to 558.019.2(3), he must serve at least eighty percent of two consecutive twenty-year sentences because he was sentenced as a class X offender on his burglary convictions. He argues that the resulting thirty-two years which he must spend in prison before he is eligible for parole or other early release is a disproportionate punishment for class C felony property crimes. Mr. Williams acknowledges that this point was not properly preserved for appeal, and he seeks review on the basis of plain error. *See State v. Baker,* 850 S.W.2d 944, 949 (Mo.App.1993).

Mr. Williams cites *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which held that the Eighth Amendment's prohibition against cruel and unusual punishment applies to sentences which are disproportionate in duration, and articulated a three-part test to determine the proportionality of a sentence in accordance with the Eighth Amendment: (1) an examination of the gravity of the offense and the harshness of the penalty; (2) a comparison of the sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of the sentences imposed for commission of the same crime in other jurisdictions. 463 U.S. at 290–292, 103 S.Ct. at 3009–10. Mr. Williams argues that the harshness of the consecutive twenty-year sentences he received is disproportionate to the gravity of the burglary offenses committed.

In support of his claim that the sentences were disproportionate to the crimes committed, Mr. Williams notes that no one was at home to be placed in danger by the burglaries, and he argues that the evidence indicates that he and his accomplice made sure that no one was inside before they entered the residences. In addition, he notes that the punishment exceeded the four concurrent sentences which the State had asked for at the sentencing hearing.

There is some question as to the continuing viability of *Solem.* Prior to *Solem,* the Missouri Supreme Court had articulated the rule that, when the duration of a sentence is

within the range prescribed by a valid statute, an appellate court cannot find that it constitutes cruel and unusual punishment on the ground that it is disproportionate to the crime committed. *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980). Then, in *Solem*, the U.S. Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment does, in fact, apply to sentences which are disproportionate to the crime committed. 463 U.S. at 284, 103 S.Ct. at 3006.

In the wake of *Solem*, the Missouri Supreme Court articulated the rule that a punishment within statutory limits can nevertheless be cruel and unusual because of its duration if it is so disproportionate to the offense committed as to shock the moral sense of reasonable people. *State v. Bell*, 719 S.W.2d 763, 766 (Mo. banc 1986). This rule was consistent not only with *Solem*, but also with some Missouri cases which had preceded *Repp*. *State v. Mitchell*, 563 S.W.2d 18, 26 (Mo. banc 1978); *State v. Agee*, 474 S.W.2d 817, 821–22 (Mo.1971);

Then, in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), two judges of the U.S. Supreme Court concurred in Part I(a) of the plurality opinion, which held that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." 501 U.S. at 965, 111 S.Ct. at 2686. This court has previously interpreted this statement as a holding overruling *Solem*, and reinstating the rule that, when the sentence imposed is within the range prescribed by the statute, it cannot be judged excessive by the appellate court. *State v. Donnell*, 862 S.W.2d 445, 453 (Mo. App.1993). The Southern District, in *State v. Stoer*, 862 S.W.2d 348, 354 (Mo.App.1993), and the Eastern District, in *Cain v. State*, 859 S.W.2d 715, 718 (Mo.App.1993), have interpreted *Harmelin* in the same way.

*Donnell, Stoer,* and *Cain* are incorrect in according this portion of *Harmelin* the weight of a majority opinion. As the State recognized, seven of the nine justices in *Harmelin* agreed that "[t]he Eighth Amendment proportionality principle also applies to non-capital sentences." *Harmelin*, 501 U.S. at 997, 111 S.Ct. at 2703 (Kennedy, J., concurring). Justice Kennedy concluded, however, that "[a] better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707 (Kennedy, J., concurring). The Missouri Supreme Court has adopted this interpretation of *Harmelin*, stating that the effect of *Harmelin* was to "alter" the three-part test in *Solem* by making it "clear that comparison to sentences given to other defendants for the same or a similar crime is irrelevant except when the court finds the sentence in question grossly disproportionate." *State v. Lee*, 841 S.W.2d 648, 654 (Mo. banc 1992). To the extent that *Donnell* is inconsistent with *Lee* and *Harmelin*, it should no longer be followed.

In any event, Mr. Williams' invocation of *Solem* affords him no relief on his claim of disproportionality. The sentences which he received were not disproportionate in light of his fourteen prior felony convictions. Under recidivist statutes like § 558.016 and § 558.019, the duration of sentence is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted and sentenced for other crimes." *Rummel v. Estelle*, 445 U.S. 263, 284–85, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382 (1980). As *Rummel* points out, one of the primary goals of such statutes is "at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time." 445 U.S. at 284, 100 S.Ct. at 1144. Point denied.

In his sole point on appeal from the denial of his Rule 29.15 motion, Mr. Williams claims that his trial counsel was ineffective for failing to request writs of body attachment and

to renew his motion for continuance after Marva Jean Stewart and Rennie Andrews, two of his subpoenaed defense witnesses, failed to appear on the second day of trial, and for failing to investigate, interview, and call certain potential defense witnesses. Mr. Williams contends that he has alleged facts which, if proven, would entitle him to relief, and therefore the motion court erred by denying his Rule 29.15 motion without an evidentiary hearing.

In his amended Rule 29.15 motion, Mr. Williams alleged that Ms. Stewart and Mr. Andrews could have established that Mr. Williams was not in possession of Ms. Stewart's automobile on the date the crimes were committed. The motion indicated that Ms. Stewart would have testified that she was using her car until 3:30 p.m. on the day of the burglaries. Mr. Andrews, the motion alleged, "would have testified that he picked up the car from Sylvester Stewart at the Hilton Plaza Hotel sometime after 9:30 p.m. on October 18, 1993, and took the car to Marva Jean Stewart for Sylvester Stewart."

In order to warrant an evidentiary hearing, Mr. Williams must allege to the motion court facts sufficient to support a finding that, if these witnesses had testified, the testimony would have created a basis for reasonable doubt concerning guilt. *State v. Boclair*, 878 S.W.2d 462, 466 (Mo.App.1994). Mr. Williams did not allege such facts in the case at bar. In his opening statement at trial, Mr. Williams' trial counsel essentially conceded that the car seen at the scene of the burglaries was that of Ms. Stewart. Therefore, we are not persuaded that Ms. Stewart's alleged testimony that she was using the car until 3:30 p.m. that day would have created a basis for reasonable doubt concerning Mr. Williams' guilt. Similarly, Mr. Andrews' alleged testimony that he picked up the car from Mr. Stewart after 9:30 p.m. that day would not have created a basis for reasonable doubt, since it was irrelevant to the pertinent time period in the afternoon.

Mr. Williams' Rule 29.15 motion also alleged that his trial counsel was ineffective for failing to investigate, interview, and present the testimony of Sylvester Stewart, who "could have testified that he had Marva Jean Stewart's vehicle after 4:00 p.m. on October 18, 1993, and that he had Rennie Andrews return the car to Marva Jean Stewart later that night." However, as in the case of Mr. Andrews, Mr. Stewart's alleged testimony would not have created a basis for reasonable doubt, since it was irrelevant to the pertinent time period in the afternoon.

In addition, Mr. Williams' Rule 29.15 motion alleged that his trial counsel was ineffective for failing to investigate, interview, and present the testimony of R.C. Moore, who could have testified that he saw Mr. Williams on the morning of October 18, 1993, at which time Mr. Williams told Mr. Moore that he intended to spend the day with Marvette Brown and their four children. The motion further alleged that Mr. Moore's testimony would have corroborated the alibi testimony of Ms. Brown, who stated at trial that Mr. Williams did spend the entire day with her.

A Rule 29.15 movant is not entitled to an evidentiary hearing if the motion, files, and records in the case conclusively show that he is not entitled to relief. *State v. Pratt*, 858 S.W.2d 291, 292–93 (Mo.App.1993). Mr. Williams' claim concerning Mr. Moore's alleged testimony would not have entitled him to relief, as a defendant's trial counsel does not render ineffective assistance by failing to present cumulative evidence. *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App.1989). Also, Mr. Moore's alleged testimony would have been inadmissible hearsay because it was offered for the truth of the matter asserted, *See State v. Chambers*, 891 S.W.2d 93, 102–03 (Mo. banc 1994), and a defendant's trial counsel will not be found ineffective for failing to present inadmissible testimony. *State v. Zimmerman*, 886 S.W.2d 684, 693 (Mo.App.1994). Point denied.

The judgments of the trial court and the motion court are affirmed.

All concur.