**STATE of Missouri, Respondent,**

v.

**Vance TIVIS, Appellant.**

**Nos. WD 50318, WD 51884.**

Missouri Court of Appeals,
Western District.

April 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 1997.

Application to Transfer Denied
Aug. 19, 1997.

---

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

BRECKENRIDGE, Presiding Judge.

Vance Tivis appeals his convictions of burglary in the second degree, § 569.170, RSMo 1994, and stealing, § 570.030, RSMo 1994.[1] Mr. Tivis contends that the trial court erred by refusing to instruct the jury on the lesser included offense of misdemeanor stealing, and by sentencing him as a class X offender. Mr. Tivis also appeals the motion court's denial, without an evidentiary hearing, of his Rule 29.15 motion in which he claimed ineffective assistance of counsel, and the denial of his request for a change of judge. The convictions, sentences and denial of post-conviction relief are affirmed.

On the morning of August 4, 1993, Jackie Noble saw a man, whom she later identified as Mr. Tivis, driving slowly through her Kansas City neighborhood. Ms. Noble watched Mr. Tivis park his car in front of a vacant lot adjacent to Matthew Campbell's house. Mr. Campbell was working away from home at the time. After Mr. Tivis parked his car, he got out, looked up and down the street, and then walked to the back of Mr. Campbell's house. Because Ms. Noble believed Mr. Tivis looked suspicious, she contacted the police and continued to watch the parked car from her front porch.

Approximately fifteen minutes after she first noticed Mr. Tivis, Ms. Noble saw him walk back toward his car through the vacant lot from Mr. Campbell's house. Mr. Tivis was wearing black gloves and was carrying a videocassette recorder (VCR), a jar full of change and a crowbar. After prying open the trunk of his car with a second crowbar, he placed both crowbars and the other items in the trunk.

Shortly thereafter, the police arrived. As they approached his car, Mr. Tivis raised the hood and told the police officers that his car had broken down. A frisk of Mr. Tivis revealed a stereo remote control in the pocket of his pants. While Mr. Tivis was held for questioning, the police investigated Mr. Campbell's house and found that the lock on the back door was broken and the house had been ransacked. Inside the house, the police discovered a stereo which matched the remote control found in Mr. Tivis' pocket. After Ms. Noble identified him as the man she observed, the police arrested Mr. Tivis. When Mr. Tivis' car was searched, the police discovered the VCR and jar of change in his trunk. Mr. Tivis was subsequently charged with burglary in the second degree and felony stealing.

At the October 4 and 5, 1994 trial on these charges, Officer Richard Green, one of the police officers who arrested Mr. Tivis, testified. He stated that Mr. Campbell identified the remote control found in Mr. Tivis' pocket as his and reported that a VCR and a jar of change had also been taken. On cross-examination of Officer Green, defense counsel elicited the information that Mr. Campbell first reported that the stolen VCR was worth $250

---

1. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

and the stereo remote, $100. When Mr. Campbell was called as a witness, he testified that the value of the VCR, remote control, and jar of change taken in the burglary was about $196. Defense counsel called Jill Kirkpatrick, an investigator with the office of the public defender, as its only witness. Ms. Kirkpatrick testified that Mr. Campbell had previously told her that the VCR was old and was not working well before it was stolen.

The jury convicted Mr. Tivis of felony burglary and stealing. He was sentenced on November 2, 1994, to two concurrent fifteen-year sentences as a prior and persistent offender under § § 558.016 and 557.036.4 and a class X offender under § 558.019. Mr. Tivis then filed a Rule 29.15 motion, which the motion court denied without an evidentiary hearing. Mr. Tivis filed timely appeals of both his conviction and the motion court's denial of his post-conviction motion.

As his first point on direct appeal, Mr. Tivis contends that the trial court erred by refusing to instruct the jury on misdemeanor stealing, a lesser included offense of felony stealing. Mr. Tivis argues that the trial court was required to give his proffered instruction on misdemeanor stealing because the jury could have found from the evidence that the property taken from Mr. Campbell's house was not worth more than $150, the threshold amount for felony stealing. Therefore, Mr. Tivis contends, there was a basis for both an acquittal on the felony stealing charge and a conviction of misdemeanor stealing.

■ The trial court is required to instruct the jury on a lesser included offense if the evidence shows the lack of an essential element of the greater offense, thereby providing a basis for a verdict acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992); § 556.046.2. This "basis" must consist of more than possibility or speculation concerning what might have happened. *State v. Haslar,* 887 S.W.2d 610, 615 (Mo. App.1994). "[D]oubts concerning whether to instruct on a lesser-included charge should be resolved in favor of including the instruction." *State v. Briscoe,* 892 S.W.2d 355, 356

(Mo.App.1995). However, there must be evidence in the record to support the giving of the instruction. *Id.* In its absence, "a trial court should not instruct on a lesser-included offense 'merely because the jury might disbelieve some of the state's evidence or decline to draw some or all of the permissible inferences.'" *Id.,* (quoting *State v. Warrington,* 884 S.W.2d 711, 717 (Mo.App.1994)).

■ In the present case, the evidence did not demonstrate the lack of an essential element of felony stealing. Felony stealing, as charged in this case, requires proof that the stolen property was worth more than $150. Mr. Tivis argues that the evidence that Mr. Campbell gave inconsistent estimates of the value of the VCR and the stereo remote, and the testimony that the VCR was bought second-hand, constituted evidence that the value of the stolen property was worth less than $150. The fact that Mr. Campbell originally gave the police estimates for the values of the VCR and stereo remote which were higher than the figures he testified to at trial, does not support a finding that the property was worth less than his trial testimony.

Mr. Tivis further argues that Mr. Campbell testified that a new VCR would cost $120, so when depreciation is considered, there was evidence that the value of his used VCR was considerably less than $120. This is a mischaracterization of Mr. Campbell's testimony. Mr. Campbell stated that he originally estimated $250 for the value of his VCR, based on what he had paid. He explained that he was aware that the price of VCRs had decreased since he bought his. Mr. Campbell indicated at trial that it would cost him $120 to replace his VCR. He had already said that his VCR was used, but in perfect working order. In context, it was evident from Mr. Campbell's testimony that he believed a comparable used VCR could be purchased for $120. Mr. Tivis cannot rely on out-of-context portions of testimony to suggest that Mr. Campbell was testifying about the cost of a new VCR.

There is no affirmative evidence, nor any reasonable inference created by the evidence, that a VCR like Mr. Campbell's was worth less than $120. Therefore, the trial court did

not err in refusing to give the proffered instruction on misdemeanor stealing.

As his second point on direct appeal, Mr. Tivis contends that the trial court erred by sentencing him as a class X offender under § 558.019. Section 558.019 provides for lengthier minimum prison sentences before certain repeat offenders are eligible for parole. Mr. Tivis claims that § 558.019 is inapplicable to him because there was an amendment to a definitional statute, § 556.061, prior to his trial and sentencing. Mr. Tivis did not object to his sentence as a class X offender and he raises this issue for the first time on appeal. Therefore, this court can only review Mr. Tivis' sentencing as a matter of plain error. Rule 30.20. *See also State v. Bickham*, 917 S.W.2d 197, 198 (Mo.App.1996).

 Under the plain error doctrine, the defendant maintains a much higher burden than in cases involving a preserved claim of prejudicial error. *State v. Magee*, 911 S.W.2d 307, 312 (Mo.App.1995). Mr. Tivis must demonstrate that his rights were so substantially affected by the error that "manifest injustice or a miscarriage of justice will result if the error is left uncorrected." *State v. Suter*, 931 S.W.2d 856, 864 (Mo.App.1996). The error must be evident, obvious, and clear to constitute plain error. *Bickham*, 917 S.W.2d at 198.

 The basis for Mr. Tivis' argument is § 1.160 which provides that "if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law." Mr. Tivis argues that the amendment to the definitional section, § 556.061, makes the stricter minimum sentence provisions of § 558.019 inapplicable, so he is entitled to its benefit and was improperly sentenced as a class X offender.

This court has previously held that § 1.160 is only applicable when the statute *creating* the offense is amended, resulting in a lessening of the punishment for the offense. In *State v. Williams*, 936 S.W.2d 828 (Mo.App. 1996), this court dealt with the identical argu-

ment presented in the case at bar, in dicta. In finding that the defendant was not entitled to the amendment to § 556.061(8) and that the trial court correctly sentenced the defendant as a class X offender, the *Williams* court relied on dicta in *State v. Tivis*, 933 S.W.2d 843 (Mo.App.1996). *Williams*, 936 S.W.2d at 831. There, this court stated that the alteration in the definition of dangerous felony was not an alteration of the law creating the offense, therefore § 1.160 did not apply. *Tivis*, 933 S.W.2d at 848 n. 3. *See also State v. Dean*, 898 S.W.2d 704, 707 (Mo.App.1995). Since § 556.061(8) is not the statute creating the offense of second degree burglary, under these cases, Mr. Tivis would not receive the benefit of its amendment.

Mr. Tivis refers this court to *State v. Whiteaker*, 499 S.W.2d 412 (Mo.1973), a Supreme Court case which he argues is in conflict with *Dean, Tivis*, and *Williams*. In *Whiteaker*, the Missouri Supreme Court considered the application of § 1.160. There, the Supreme Court dealt with the question of whether a defendant convicted of second degree murder should get the benefit of an amendment to a statute dealing with credit for jail time served. Applying § 1.160, the Supreme Court granted the defendant the benefit of the amendment although it clearly was not the statute creating the offense of second degree murder. *Id.* at 420–21. Although the *Whiteaker* court did not specifically discuss the nature of the statute, it did not attach significance to the fact that it was not the statute creating the offense. *Whiteaker* focused instead on the provision of the statute requiring that all pending "proceedings shall be conducted according to *existing laws*." *Id.* Since the statute has been amended to now require that the proceedings be conducted according to "*existing procedural laws*," the holding of *Whiteaker* may not be in conflict with the views expressed in *Dean, Tivis*, and *Williams*. Section 1.160(1) (emphasis added). However, we need not resolve this issue, because an analysis of the amendment to § 556.061(8) reveals that it does not lessen the punishment applicable to Mr. Tivis within the meaning of § 1.160.

Mr. Tivis committed the offenses he was convicted of on August 4, 1993. At that time, § 558.019, RSMo Cum.Supp.1992, applied to certain class A and B felonies and dangerous felonies. Section 556.061(8), RSMo Cum.Supp.1992, defined dangerous felonies to include burglary. Under § 558.019 there was a graduated schedule of required minimum sentences for repeat offenders who had previously served time of at least 120 days in the Missouri Department of Corrections, or a comparable state or a federal prison:

(1) If the defendant is a prior offender [one prior felony conviction], the minimum prison term which the defendant must serve shall be forty percent of his sentence;

(2) If the defendant is a persistent offender [two prior felony convictions committed at different times], the minimum prison term which the defendant must serve shall be sixty percent of his sentence;

(3) If the defendant is a class X offender [three or more prior felony convictions committed at different times], the minimum prison term which the defendant must serve shall be eighty percent of his sentence.

§ 558.019.2, RSMo Cum.Supp.1992. Because Mr. Tivis had six prior felony convictions committed at different times and had served time in the Department of Corrections on three occasions, all for more than 120 days, under § 558.019, RSMo Cum.Supp.1992, Mr. Tivis would qualify as a class X offender and be required to serve 80% of his sentence before being eligible for parole.

The General Assembly amended § 558.019, effective August 28, 1993. As part of this amendment, the statute provided that any individual convicted of certain class A or B or dangerous felonies who had served time in the Department of Corrections, or a comparable state or a federal prison, was subject to the following provisions:

(1) If the defendant has one prior felony conviction, the minimum prison term which the defendant must serve shall be forty percent of his sentence;

(2) If the defendant has two prior felony convictions committed at different times, the minimum prison term which the defendant must serve shall be sixty percent of his sentence;

(3) If the defendant has three or more prior felony convictions committed at different times, the minimum prison term which the defendant must serve shall be eighty percent of his sentence.

§ 558.019.2, RSMo Cum.Supp.1993.

Although burglary was still a dangerous felony subject to § 558.019 under § 556.061(8), RSMo Cum.Supp.1993,[2] the 1993 version of § 558.019 no longer used the label "class X offender." But, even though the class X offender label was abolished, the difference was merely semantic because the substantive provisions of the pre–1993 version for prior offenders are identical to those in the amended version, except that the 1993 version of § 558.019 no longer required the service of a minimum sentence of 120 days in order to qualify for the statute. Because Mr. Tivis had six felony convictions at different times and had served time in the Department of Corrections, he would be required to serve 80% of his sentence before being eligible for parole under the 1993 version as well.

During the 1994 legislative session, the General Assembly amended § 558.019 again and also modified the definition of dangerous felony found in § 556.061, effective August 28, 1994. As stated in § 556.061(8), RSMo 1994, a dangerous felony "means the felonies of arson in the first degree, assault in the first degree, forcible rape, forcible sodomy, kidnapping, murder in the second degree and robbery in the first degree." Although burglary is no longer a dangerous felony under § 556.061, RSMo 1994, this amendment would not lessen Mr. Tivis' punishment because the 1994 amendment to § 558.019.2 expanded the scope of that section to apply to *all* felonies: "The provisions of this section shall be applicable to all classes of felonies except those set forth in chapter 195, RSMo [narcotic offenses], and those otherwise ex-

---

**2.** Section 556.061 was amended in 1993. However, the amendment did not alter the definition of "dangerous felony." Section 556.061(8), RSMo Cum.Supp.1993.

cluded in subsection 1 of this section."[3] The legislature made an additional change by defining repeat offenders in terms of prior remands to the Department of Corrections for felony offenses, instead of prior convictions.

If the 1994 amendments to §§ 556.061 and 558.019 were applicable, Mr. Tivis would still be eligible for parole only after serving 80% of his sentence, because he has three or more previous remands to the Department of Corrections for felonies unrelated to the present offense. Therefore, regardless of whether the relative provisions of RSMo Cum.Supp. 1992, RSMo Cum.Supp.1993, or RSMo 1994 apply, Mr. Tivis would be required to serve 80% of his sentence before being eligible for parole.

Nevertheless, Mr. Tivis argues that he should receive the benefit of the 1994 amendment to § 556.061(8), defining dangerous felony because the amendment operates to lessen his punishment since it removes him from the category of prior offenders subject to lengthier minimum prison terms. Since the 1994 version of § 558.019 is not applicable to Mr. Tivis on its face,[4] Mr. Tivis essentially is arguing that the 1994 amendment of the definition of dangerous felony in section 556.061 serves to make the 1993 or 1992 versions of § 558.019 inapplicable as well.

■ Although this is a creative argument, it ignores the doctrine of *in pari materia* which obligates this court to interpret statutory provisions with reference to each other in order to determine the legislative intent. *See State v. Meanor*, 863 S.W.2d 884, 891 (Mo. banc 1993) (statute creating criminal offense read *in pari materia* with statute which defined term). The doctrine is particularly applicable when the statutes are passed during the same legislative session. *Rothschild v. State Tax Commission*, 762 S.W.2d 35, 37 (Mo. banc 1988). The foregoing review of the statutes and the effect of the amendments to §§ 558.019 and 556.061 convinces this court that the legislature did not intend for the 1994 amendment to § 556.061, modifying the definition of dangerous felonies, to be effective other than as applied to the 1994 version of § 558.019. When section 556.061(8), RSMo 1994, and 558.019, RSMo 1994, are read together, the statutes evidence the legislature's intention to keep the punishment for a repeat offender convicted of the class C felony of burglary consistent with the punishment imposed under prior versions of the statutes. There is no basis for believing the legislature intended to create a short-lived, drastic reduction in the mandatory minimum sentence for repeat offenders convicted of those felonies like burglary which were eliminated from the definition of "dangerous felony" in the 1994 amendment to section 556.061(8).

Therefore, the provisions of § 556.061(8), RSMo Cum.Supp.1992, which include burglary as a dangerous felony, apply to Mr. Tivis. Under the 1993 amendment to § 558.019, although it deletes the label "class X offender," the effect of the statute is exactly the same as the 1992 version of § 558.019. So even if § 1.160 controlled, there is no lessening of punishment by the 1993 amendment because, under either version, Mr. Tivis would have to serve 80% of his sentence before being eligible for parole. The trial court did not err in sentencing Mr. Tivis as a class X offender under section 558.019.

■ As his final point on direct appeal, Mr. Tivis alleges that the trial court erred by finding him to be a class X offender because he was not charged as a class X offender in the second-amended information. The second-amended information charged Mr. Tivis as a prior and persistent offender pursuant to § 558.019, RSMo, on both the second degree burglary count and the stealing count, and supported the charge by listing Mr. Tivis' eight prior felony convictions, committed at six different times. As stated previously, the 1992 version of § 558.019.4 defined a prior offender as "one who has previously pleaded guilty to or has been found guilty of

---

3. Subsection 1 provides that "[t]his statute shall not affect those provisions of sections 565.020, RSMo, 558.018 or 571.015, RSMo, which set minimum terms of sentences, or the provisions of section 559.115, RSMo, relating to probation."

4. Section 558.019.7 provides that the new statute only applies to offenses occurring on or after August 28, 1994. Since Mr. Tivis committed his crimes on August 4, 1993, he is outside of its scope.

one felony," while a persistent offender was "one who has previously pleaded guilty to or has been found guilty of two felonies committed at different times." A class X offender was defined as "one who has previously pleaded guilty to or has been found guilty of three prior felonies committed at different times." Section 558.019.4(3).

Mr. Tivis argues that the failure of the State to specifically charge him as a "class X offender" in the information, deprived him of his due process rights and of his right to fair notice of the charges against him. Again, Mr. Tivis did not object to the court sentencing him as a class X offender. He raises this issue for the first time on appeal, so this court can only review it as a matter of plain error. Rule 30.20; *Bickham*, 917 S.W.2d at 198.

No "manifest injustice" or "miscarriage of justice" resulted from the court's finding that Mr. Tivis was a class X offender, and sentencing him accordingly. Mr. Tivis knew that he was, in fact, charged as a repeat offender, under § 558.019, RSMo Cum.Supp. 1992, and that his prior felony convictions listed in the information supported the application of section 558.019. *See Anglin v. State*, 759 S.W.2d 375, 377 (Mo.App.1988). The information pleaded all of the essential facts warranting a finding that Mr. Tivis was a class X offender. Section 558.021.1(1); *Anglin*, 759 S.W.2d at 377. The only deficiency is the State's failure to use the correct repeat offender classification term of "class X offender." Mr. Tivis does not indicate how he was prejudiced by the State's use of the term "prior and persistent offender" without reference to "class X offender." *Id.* The failure to the State to use the correct label may simply have resulted from a confusion over whether the 1992 or 1993 version of section 558.019 governed. Regardless, Mr. Tivis fails to demonstrate how this defect so substantially affected his rights that a miscarriage of justice resulted.

As the sole support for his position, Mr. Tivis cites the case of *Croney v. State*, 860 S.W.2d 17 (Mo.App.1993). In *Croney*, the grand jury indicted the defendant for second degree burglary and stealing $150 or more. *Id.* at 18. At his guilty plea hearing, Mr.

Croney admitted prior felony convictions, and the State noted that Mr. Croney had served more than 120 days for two prior felonies of burglary and felonious restraint. *Id.* The trial court found Mr. Croney to be a persistent offender and sentenced him as such. *Id.* In the hearing on Mr. Croney's Rule 24.035 motion, the court vacated its sentences and the guilty pleas, and reinstated the case, based upon its finding that the charge of persistent offender was not filed in the information. *Id.* at 19. The Southern District affirmed the motion court's action. *Id.*

Unlike the present case, there is no indication in *Croney* that the State listed Mr. Croney's prior felony convictions in the information or indictment, nor that the defendant had any notice that he was going to be sentenced as a repeat offender. *Croney* can be distinguished on its facts and is not controlling here. Therefore, the trial court did not plainly err in sentencing Mr. Tivis as a class X offender. Point three is denied.

In Mr. Tivis' appeal from the denial of his Rule 29.15 motion, he first claims that the motion court erred in denying his claim of ineffective assistance of counsel without an evidentiary hearing. Mr. Tivis contends that he alleged facts, which if proven, would entitle him to relief since he alleged that his trial counsel improperly cross-examined Officer Richard Green and rendered ineffective assistance of counsel in violation of his due process rights.

Before Mr. Campbell testified that he believed the property taken from his home had a total value of approximately $196, Mr. Tivis' trial counsel asked Officer Green on cross-examination about Mr. Campbell's prior assessment of the value at approximately $396. Mr. Tivis contends that this cross-examination provided evidence to prove the element of the offense of felony stealing that the value of the stolen property exceeded $150. Therefore, Mr. Tivis alleges that his attorney provided ineffective assistance of counsel when defense counsel elicited evidence that relieved the State of its burden of proving this element.

Review of the motion court's ruling on Mr. Tivis' Rule 29.15 motion is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995). The issue before the court in this case is whether the motion court clearly erred in denying Mr. Tivis' motion without an evidentiary hearing. In order to be entitled to an evidentiary hearing, the motion must satisfy a three-part test: "(1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not conclusively refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Id.* at 55.

Mr. Tivis' burden of proof on his claim of ineffective assistance of counsel is set out by the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* test, he must show that his attorney failed to exercise the level of skill and diligence of a reasonably competent attorney in a similar situation, and that he was prejudiced by that failure. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 674. Reasonable trial strategy will not support a claim of ineffective assistance of counsel. *State v. Beishline*, 926 S.W.2d 501, 507 (Mo.App.1996). With "tactical decisions there exists a strong presumption that counsel was effective and it will be the rare exception where a strategic choice is declared to have been so unsound as to amount to ineffectiveness." *State v. Johnson*, 829 S.W.2d 630, 633 (Mo.App.1992).

In her questioning of Officer Green, trial counsel was attempting to impeach Mr. Campbell's credibility through the inconsistent valuations of the property. Impeachment of witnesses is a matter of trial strategy. *See State v. Martin*, 852 S.W.2d 844, 852 (Mo.App.1992). The reasonableness of this trial strategy is demonstrated by the fact that Mr. Tivis utilized the evidence elicited by the cross-examination of Officer Green in arguing his case on appeal. Furthermore, Mr. Campbell subsequently testified as to the value of the stolen property, so Mr. Tivis suffered no prejudice by the cross-examination of Officer Green.

Mr. Tivis has failed to sustain his burden of proving ineffective assistance of counsel in light of counsel's wide latitude in determining trial strategy. *State v. Franklin*, 854 S.W.2d 438, 441 (Mo.App.1993). The record conclusively refuted Mr. Tivis' claim of ineffective assistance of counsel. Therefore, the motion court did not err in denying his Rule 29.15 motion without an evidentiary hearing. Point denied.

Mr. Tivis next appeals from the motion court's denial of his motion for a change of judge. He alleges this was error because the trial judge demonstrated his bias at two points during the proceedings. First, during sentencing, the trial judge remarked that trial counsel "did a remarkable job" and gave a "rather eloquent" closing argument. Second, on Mr. Tivis' motion to lower his appeal bond, the trial court instead raised it from $300,000 to $500,000. From these actions, Mr. Tivis argues, an objective onlooker would reasonably question the judge's impartiality.

On appeal, this court is limited to a determination of whether the ruling on the motion was clearly erroneous. Rule 29.15(j); *Driver*, 912 S.W.2d at 54. In post-conviction proceedings, unlike the automatic change of judge in civil proceedings under Rule 51.05, the movant must show a disqualifying bias and prejudice to receive a change of judge. *Thomas v. State*, 808 S.W.2d 364, 367 (Mo. banc 1991); *State v. Isaiah*, 874 S.W.2d 429, 436 (Mo.App.1994). Cause consists of evidence that the trial judge's participation in the case was influenced by a personal bias or prejudice that arose from some extrajudicial source. *State v. Boulware*, 923 S.W.2d 402, 408 (Mo.App.1996). This court notes that there is a strong presumption that judges are impartial and can discern their own bias or prejudice. *Id.* Therefore, Mr. Tivis must prove that the trial judge abused his discretion in denying Mr. Tivis' motion for a change of judge. *Id.*

First, Mr. Tivis contends that the trial judge's praise of defense counsel at sentencing demonstrated that he had already decided how he would rule on Mr. Tivis'

forthcoming Rule 29.15 claim of ineffective assistance of counsel. However, because Mr. Tivis had a right to proceed under Rule 29.15, at the time of sentencing the trial judge was required by Rule 29.07(b)(4) to "examine the defendant as to the assistance of counsel received by the defendant." The comments he made about trial counsel's performance were a part of his determination under Rule 29.07(b)(4) concerning counsel's performance. Because "[a] judge's regular rulings in the ordinary course of presiding over judicial proceedings properly before him will rarely if ever constitute evidence of partiality such as to require him in good conscience to recuse himself," *City of Kansas City v. Wiley*, 697 S.W.2d 240, 244 (Mo.App. 1985), the trial judge's evaluation of defense counsel in his Rule 29.07 ruling does not constitute a disqualifying bias.

█ Second, Mr. Tivis argues that the judge's bias was demonstrated by his increasing Mr. Tivis' bail requirements upon a motion to have them lowered. The objective evidence in this case does not support this conclusion. The trial judge's decision to raise the bail requirements came after Mr. Tivis had been convicted by a jury. Rule 33.06(a)(4) gives the trial judge the power to raise a convicted defendant's bail upon motion by the State or by the accused, or upon the court's own motion. Rule 33.06(a)(4). In this case, the trial court was well-justified in raising Mr. Tivis' bail. Mr. Tivis committed the burglary at issue while on bond pending appeal in another case. *See State v. Tivis*, 884 S.W.2d 28 (Mo.App.1994). In addition, less than one month after his arrest in this case, and while on bond, Mr. Tivis committed another burglary and felony stealing. *See Tivis*, 933 S.W.2d at 845.

█ A judge must recuse if "a reasonable person would have a factual basis to doubt the judge's impartiality." *State v. Taylor*, 929 S.W.2d 209, 220 (Mo. banc 1996). If the recusal motion is "substantively insufficient," in that the facts presented form an insufficient basis for recusal, the judge is not required to have a different judge hear the motion. *Id.* at 221.

█ In the present case the facts alleged by Mr. Tivis, even if true, are not sufficient to support a finding that the trial judge was biased against Mr. Tivis and require him to disqualify himself from the case. The two acts of the trial judge that Mr. Tivis cites as evidence of the judge's bias are, as a matter of law, "substantively insufficient," and the trial judge properly denied Mr. Tivis' motion for a change of judge. *Id.* The trial judge's acts were performed in the course of making two separate rulings, and such rulings are not evidence of a judge's bias. Therefore, the motion for change of judge fails to state a basis for disqualification. Since the granting of a motion to change judges rests upon the discretion of the hearing court, and there is no evidence of the trial judge's bias, this court affirms the trial court's ruling. *Bland v. State*, 805 S.W.2d 192, 194 (Mo.App.1991).

█ Mr. Tivis also challenges the sufficiency of the evidence to sustain his convictions of burglary and stealing in a letter filed subsequent to Mr. Tivis' original brief and supplemental brief. This "letter brief" was filed without leave of court and will not be considered. Rules 84.04 and 84.05. However, had the issue been raised it would have been futile. There was an eyewitness who observed Mr. Tivis walk to the back of the house which was burglarized and return carrying a crowbar and property from the burglarized home. Mr. Tivis was arrested on the scene by the police and was found to have the victim's property on his person and in his vehicle. There is overwhelming evidence to support Mr. Tivis' convictions.

The judgments of the trial and motion courts are affirmed.

All concur.