**STATE of Missouri, Respondent,**

v.

**Steven K. HALL, Appellant.**

**No. WD 58929.**

Missouri Court of Appeals,
Western District.

Aug. 21, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 2001.

Jeannie Willibey, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Assistant Atty. Gen., Jefferson City, MO, Attorneys for Respondent.

Before EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Steven K. Hall appeals the judgment of his jury conviction in the Circuit Court of Clay County for the class C felony of receiving stolen property, § 570.080,[1] for which he was sentenced as a prior and persistent offender, §§ 558.016, 557.036,[2] to five years imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because the State failed to prove beyond a reasonable doubt, as required by due process, each and every element of the crime of which he was convicted, receiving stolen property. In Point II, he claims that the court erred or plainly erred in sentencing him to five years in prison because it violated his constitutional right to be free from cruel and unusual punishment.

We affirm.

### Facts

In July 1997, Deborah Spruill, a professional tutor and computer trainer for kids,

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. The record would reflect that the appellant was charged and found to be a prior and persistent offender and was sentenced accordingly. However, for some unexplained reason, the court's docket entry of August 18, 2000, found that he was a "Persistent drug offender (195.295 RSMo)." In any event, that fact is not raised as an issue on appeal and has no bearing on the issues that are raised.

and her husband, Bob Spruill, a computer consultant, purchased an IBM Thinkpad laptop computer for approximately $3,100. They paid an additional $900 for program enhancement. Deborah used the laptop at work to prepare class presentations and to keep tutoring logs. In addition, her husband occasionally used the laptop to write computer programs.

In February 1999, Deborah discovered that the laptop was missing. After searching at length for it at work and home, and not finding it, she called the police and reported it stolen. At the suggestion of the police, she called five or six area pawnshops, giving each a description of the laptop, including the model and serial number.

On February 22, 1999, the appellant went to Lucky's Pawn Shop, located at 72nd and North Oak Trafficway. He talked with an employee, Nathan Dial, who recognized him as a customer who had been in the store a couple of times before. The appellant offered to sell a laptop computer for $100. Dial accepted his offer. Upon purchasing the laptop, as part of standard store procedure, Dial entered a description of the transaction in the shop's computer system, and had the appellant sign a copy of the sales ticket, which included his name, address, height, description, date of birth, and driver's license number. By signing the sales ticket, the appellant also agreed that he was the legal owner of the laptop, with the right to sell it.

On March 2, 1999, an unidentified employee of the pawnshop contacted Deborah and told her that the shop had her laptop and offered to sell it back to her for $100. Deborah went to the store and, after confirming that it was her computer, bought it back. Thereafter, unable to get the laptop to operate properly, Deborah took it to a computer store for repairs. After the laptop was repaired, Deborah noticed in using it that the user name had been changed from "Debbie" to "Steve," and that the password had been changed from "Stars" to "Steve."

On March 16, 1999, Detective Daniel Burns of the Kansas City, Missouri, Police Department, who had been investigating the theft of the computer, interviewed Dial, who told him that he had purchased the laptop from the appellant for $100 on February 22, 1999. Based on this information, the appellant was brought in for questioning by Detective Burns. The appellant confirmed that he had pawned the laptop, which he had purchased for $75 from an unknown black man, who was standing outside of Cash America Pawn.

A felony complaint was filed in the Circuit Court of Clay County, Division 6, charging the appellant with the class C felony of receiving stolen property, in violation of § 570.080. The appellant was later arrested on a warrant. On October 22, 1999, after the appellant had waived his preliminary hearing, the State filed a felony information, charging the appellant with receiving stolen property. After a change of judge was granted, the State filed, on May 19, 2000, its first amended information charging the appellant as a prior offender and a persistent offender.

On July 17 and 18, 2000, the appellant's case was heard by a jury in the Circuit Court of Clay County, Division 2, the Honorable David W. Russell presiding. At trial, Deborah Spruill testified that she and her husband purchased the laptop in July 1997 for approximately $3,100 and then spent an additional $900 for program enhancement. Dial testified that the appellant offered to sell him the laptop for $100; that he usually accepted the sale price that a customer offered, if it was reasonable; and that he routinely offered to buy a pawned item for fifty percent of its resale

value. Scott Petrak, a computer store owner called by the appellant, testified that the stolen laptop would not be worth very much in today's market, and that he had seen computers depreciate by as much as sixty percent in less than a year. He never testified to a specific value of the computer on February 22, 1999. The appellant's wife, Melissa Hall, testified that her husband had purchased the laptop from a man named Joe Craver for $175, receiving a receipt for the same.

The appellant filed written motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence, both of which were overruled by the court. The case was submitted to the jury, which found the appellant guilty as charged.

On August 10, 2000, the appellant filed his motion for judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial. On August 18, 2000, the trial court heard and denied the motion. The appellant was then sentenced to five years in the Missouri Department of Corrections as a prior and persistent offender.

This appeal follows.

## I.

In Point I, the appellant claims that the circuit court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because the State failed to prove beyond a reasonable doubt, as required by due process, each and every element of the crime of receiving stolen property. Specifically, he claims that the State failed to prove beyond a reasonable doubt that the laptop computer had a value of $150 or more at the time it was pawned. We disagree.

 "When reviewing the sufficiency of [the] evidence supporting a criminal conviction, the [c]ourt does not act as a ' "super juror" with veto powers,' but gives great deference to the trier of fact." *State v. Williams,* 24 S.W.3d 101, 118 (Mo.App. 2000) (citations omitted). "Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt." *Id.* (*citing State v. Ellison,* 980 S.W.2d 97, 98 (Mo.App.1998); *State v. Brown,* 996 S.W.2d 719, 728 (Mo.App. 1999)). In our review, all evidence favorable to the State and all reasonable inferences drawn therefrom are accepted as true, and all evidence and inferences to the contrary are disregarded. *State v. Knese,* 985 S.W.2d 759, 769 (Mo. *banc* 1999) (citation omitted); *State v. Ervin,* 979 S.W.2d 149, 159 (Mo. *banc* 1998) (citation omitted).

 To convict a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the offense charged. *State v. Scurlock,* 998 S.W.2d 578, 582 (Mo.App.1999) (*citing State v. Roberts,* 948 S.W.2d 577, 590 (Mo. *banc* 1997)); *State v. Price,* 980 S.W.2d 143, 144 (Mo.App.1998) (*citing In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The appellant was charged with and convicted of receiving stolen property, under § 570.080, which reads, in pertinent part:

1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

. . .

3. Receiving stolen property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more . . . in which [case]

receiving stolen property is a class C felony.

The State alleged that the appellant disposed of the laptop computer, which at the time had a value of $150 or more, knowing that it was stolen. "To be guilty of the [class C] felony of receiving stolen property by disposing of it, one must be proven beyond a reasonable doubt to have, on or about a date certain, in a Missouri county, disposed of another person's property, having a value of at least one-hundred and fifty dollars, in a way that made recovery by the owner unlikely, knowing at that time that the property had been stolen." *State v. Mayfield,* 879 S.W.2d 561, 564 (Mo.App.1994) (citation omitted). Section 570.020(1) defines "value" as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost or replacement of the property within a reasonable time after the crime[.]" In this point, the appellant does not challenge the sufficiency of the evidence to establish that he knew the laptop computer was stolen at the time he disposed of it. Rather, he claims only that the evidence was insufficient to prove that the laptop had a value of $150 or more at the time he pawned it.

"In Missouri, the purchase price and the age of an item are sufficient to establish its value under § 570.020." *State v. Merchant,* 871 S.W.2d 102, 104 (Mo.App. 1994) (citation omitted). In that regard, the record reflects that Deborah testified that she and her husband had purchased the computer for $3,100 in July 1997, and had spent an additional $900 for program enhancement. The record reflects further that the appellant pawned the laptop in February 1999. Thus, for the jury to find that it had a value of at least $150 at the time it was pawned, it would only have had to infer that it was worth at least 3.75 percent of its purchase price of approximately seventeen months earlier. This was a reasonable inference for the jury to draw such that the evidence was sufficient to establish that the laptop had a value of at least $150 at the time the appellant pawned it.

In addition to Deborah's testimony establishing the requisite value of the laptop, there was also the testimony of the appellant's wife, who testified, *inter alia,* that the appellant purchased the laptop from a man named Craver who gave him a receipt showing that he had purchased it for $175. Given the fact that the laptop was stolen sometime in February and was pawned on February 22, the jury could have reasonably inferred from the appellant's wife's testimony that it had a value of at least $150 on the date it was pawned.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred or plainly erred in sentencing him as a persistent offender to five years in prison because it violated his constitutional right to be free from cruel and unusual punishment. Specifically, he claims that his sentence constituted cruel and unusual punishment in that "individuals found guilty of actually stealing property worth less than seven hundred fifty dollars (as opposed to disposing of stolen property) would serve a maximum of one year in the county jail and would not be subject to the extended term provisions."

The State disputes whether the appellant properly preserved his claim of error for review, limiting him to plain error review under Rule 30.20. We need not decide this issue inasmuch as even assuming, *arguendo,* that the issue was properly preserved, we find no error, plain or otherwise.

The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." As to this Amendment, prior to the United States Supreme Court's decision in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Missouri Supreme Court "had articulated the rule that, when the duration of a sentence is within the range prescribed by a valid statute, an appellate court cannot find that it constitutes cruel and unusual punishment on the ground that it is disproportionate to the crime committed." *State v. Williams*, 936 S.W.2d 828, 831–32 (Mo.App.1996) (*citing State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980)). In *Solem*, the Court held that the Eighth Amendment's prohibition against cruel and unusual punishment did apply to a sentence which is disproportionate to the crime committed. *Solem*, 463 U.S. at 284, 103 S.Ct. at 3006, 77 L.Ed.2d at 645. In so holding, the Court "articulated a three-part test to determine the proportionality of a sentence in accordance with the Eighth Amendment: (1) an examination of the gravity of the offense and the harshness of the penalty; (2) a comparison of the sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of the sentences imposed for commission of the same crime in other jurisdictions." *Williams*, 936 S.W.2d at 831 (*citing Solem*, 463 U.S. at 290–92, 103 S.Ct. at 3009–10, 77 L.Ed.2d at 649–50). As a result of *Solem*, the Missouri Supreme Court adopted "the rule that a punishment within statutory limits can nevertheless be cruel and unusual because of its duration if it is so disproportionate to the offense committed as to shock the moral sense of reasonable people." *Id.* at 832 (*citing State v. Bell*, 719 S.W.2d 763, 766 (Mo. banc 1986)).

After *Solem*, the U.S. Supreme Court decided *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). There, two justices of the Court "concurred in Part I(a) of the plurality opinion, which held that '*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee.'" *Williams*, 936 S.W.2d at 832 (*quoting Harmelin*, 501 U.S. at 965, 111 S.Ct. at 2686, 115 L.Ed.2d at 846). Interpreting *Harmelin*, all three districts of this court reinstated the prior rule that, "when the sentence imposed is within the range prescribed by the statute, it cannot be judged excessive by the appellate court." *Id.* However, this interpretation ignored that portion of Justice Kennedy's concurring opinion in *Harmelin* stating that " '[a] better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *Id.* (*quoting Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d at 871 (Kennedy, J., concurring)). Seizing on this language, the Missouri Supreme Court in *State v. Lee*, 841 S.W.2d 648, 654 (Mo. banc 1992), interpreted *Harmelin* as altering the three-part cruel and unusual punishment test of *Solem* by making it "clear that comparison to sentences given to other defendants for the same or a similar crime is irrelevant except when the court finds the sentence in question grossly disproportionate." We are bound by *Lee*; thus, in determining whether the appellant's sentence here was cruel and unusual punishment we will not compare it to the maximum sentence a defendant could receive for stealing property, as opposed to receiving stolen property, as the appellant asks us to do, unless we first determine that his sentence was grossly dispropor-

tionate to the crime of which he was convicted.

Section 570.080.3 makes receiving stolen property with a value of more than $150 a class C felony. Section 558.011.1(3) provides that the authorized term of imprisonment for a class C felony is "a term of years not to exceed seven years." Section 558.016.1 authorizes the sentencing of a defendant as a persistent offender. Section 558.016.3 defines "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016.7(3) provides, *inter alia*, that the authorized maximum term of imprisonment for a persistent offender for a class C felony is a "term of years not to exceed twenty years."

 The appellant claims that his five-year sentence is disproportionate to the crime for which he was convicted, receiving stolen property, in that if he would have been charged with actually stealing the laptop computer under § 570.030, he could have only been convicted of and sentenced for a class A misdemeanor, § 570.030.7, with a maximum authorized sentence of one year in the county jail, § 558.011.1(5), and would not have been subject to the extended term provisions of § 558.016.7 as a persistent offender. His argument is based upon the fact that § 570.030.3 and § 570.030.7 provide that stealing property of a value less than $750 is a class A misdemeanor. Thus, the appellant's argument that had he been charged with and convicted of actually stealing the laptop, he could have only received a maximum sentence of one year in the county jail, presumes that the State could not have proven that the laptop had a value of $750 or more, which is pure speculation. In any event, as discussed, *supra*, the appellant could have been sentenced as a persistent offender to a maximum of twenty years in the Missouri Department of Corrections. As this court has previously recognized in *Williams*, 936 S.W.2d at 832 (*citing Rummel v. Estelle*, 445 U.S. 263, 284–85, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382, 397–98 (1980)), there is nothing cruel and unusual in basing a sentence not only on the criminal act for which the defendant is being sentenced, but for his or her prior convictions and sentences. Here, despite the fact that the trial court found that the appellant was a persistent offender, it chose not to enhance his sentence, choosing instead to sentence him to only five years, which was less than the seven-year maximum for a class C felony, without an extended term, § 558.011.1(3). We cannot say that a five-year sentence for a persistent offender convicted of receiving stolen property, who could have received a maximum sentence of twenty years, was grossly disproportionate requiring us to apply the three-part cruel and unusual punishment test of *Solem*.

Point denied.

## Conclusion

The judgment of the circuit court convicting the appellant of receiving stolen property and sentencing him to five years in the Missouri Department of Corrections is affirmed.

HOWARD and HOLLIGER, JJ., concur.